REBECCA BEAUCHESNE, PETITIONER v. UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, RESPONDENT

No. COA95-914

(Filed 4 March 1997)

1. **Public Officers and Employees § 53 (NCI4th)— exhaustion of leave time—dismissal—applicable administrative code**

   In an action arising from the dismissal of an employee who was unable to return to work after she had exhausted her leave time, the State Personnel Commission committed no error of law in determining 25 NCAC 1D.0519 to be applicable, and in determining that consideration of the factors set out in 25 NCAC 1E.1104 was neither necessary nor appropriate because 25 NCAC 1D.0519 covers circumstances wherein an employee is presently absent from work, has no leave time to cover the absence, and is therefore subject to separation. 25 NCAC 1E.1104 governs requests for unpaid leave at some future date, regardless of whether the employee has available leave time.

   **Am Jur 2d, Job Discrimination § 1067; Wrongful Discharge § 190.**

2. **Public Officers and Employees § 53 (NCI4th)— exhaustion of leave—application for leave without pay—not an alternative proposal**

   In an action arising from petitioner's discharge from a secretarial position at the Ackland Museum at the University of North Carolina at Chapel Hill after exhausting her sick and vacation leave, her application for unpaid leave did not qualify as an alter-

BEAUCHESNE v. UNIVERSITY OF N.C. AT CHAPEL HILL

[125 N.C. App. 457 (1997)]

native proposal under 25 NCAC 1D.0519(b) because it is evident that the accommodations anticipated in that provision do not include leave without pay, but rather such alternatives as reduction in hours from full to part-time, or alteration of the work schedule to make the employee available to perform critical work.

**Am Jur 2d, Job Discrimination § 1067; Wrongful Discharge § 190.**

3. **Public Officers and Employees § 53 (NCI4th)— leave exhausted—employee terminated—State Personnel Commission review—whole record test**

The trial court did not err in an action arising from petitioner's discharge as a secretary for the Ackland Museum at the University of North Carolina at Chapel Hill by upholding the State Personnel Commission's ruling as neither arbitrary nor capricious where a review of the whole record revealed substantial evidence to support the Commission findings that petitioner was properly terminated under applicable provisions of 25 NCAC 1D.0519 and petitioner presented no evidence of when, if ever, she would return to work.

**Am Jur 2d, Administrative Law §§ 529-532.**

4. **Public Officers and Employees § 53 (NCI4th)— shared leave application—failure to process—no agency action— not a contested case**

The State Personnel Commission properly ruled that petitioner did not have a right of appeal regarding the failure to process in a timely manner a shared leave application. The failure to process petitioner's application did not involve a disciplinary action, petitioner has proffered no allegations of discrimination, and there is no provision in the State Personnel Act indicating that agency action on a request for shared leave gives rise to a contested case.

**Am Jur 2d, Administrative Law §§ 498, 499.**

Judge GREENE concurring in the result.

Appeal by petitioner from order entered 17 April 1995 by Judge Osmond Smith in Alamance County Superior Court. Heard in the Court of Appeals 19 April 1996.

*North State Legal Services, Inc., by Carlene McNulty, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Associate Attorney General M. A. Kelly Chambers and Assistant Attorney General Anne J. Brown, for defendant-appellee.*

JOHN, Judge.

Petitioner Rebecca Beauchesne argues the trial court erred by affirming the State Personnel Commission's [SPC] decision that she was not unfairly denied leave without pay and that she could not pursue an appeal based on her application for shared leave. We conclude petitioner's contentions are unavailing.

Petitioner was employed by the Ackland Art Museum (the museum) at the University of North Carolina at Chapel Hill (the University) from 9 September 1987 until she was terminated 29 May 1992. At the time of her discharge, petitioner's position, classified Secretary IV, was the only secretarial position in the museum. Petitioner was responsible for seventy-five percent of the correspondence processed by the museum, serving in addition as receptionist and telephone operator. Her duties also included managing the museum payroll, circulating mail, and filing.

Petitioner left work early on 13 April 1992 due to a migraine headache and was subsequently hospitalized. Petitioner informed her employer that she would be unable to return to work for the remainder of the week. In letters to the museum dated 22 April and 28 April 1992, Dr. Xaver Hertle (Dr. Hertle) explained that petitioner had been hospitalized and that he was unsure when she would be able to return to work. Dr. Hertle's 28 April letter requested that petitioner be considered for shared leave, a process by which an employee might utilize accumulated leave voluntarily donated by another employee, *see* N.C. Admin. Code tit. 25, r. 1E.1301 *et seq.* (effective 1 May 1990), and included petitioner's application for such leave. Petitioner's 6 May letter to museum director Dr. Charles Millard (director Millard) also referred to her request for shared leave. However, director Millard neither affixed his signature in the designated space on the request form, nor forwarded it for approval to the University's shared leave coordinator in the Department of Human Resources.

Before receiving Dr. Hertle's 28 April letter, director Millard sent petitioner correspondence dated 30 April 1992, indicating she had

exhausted her available sick and vacation leave and in fact was 42 hours overdrawn on allotted leave time. In this letter, director Millard stated the museum had processed the paperwork to place petitioner on leave without pay retroactive to 6 April 1992, pending a final decision concerning her position at the museum.

In an 8 May letter to petitioner, director Millard reported he would be unable to grant additional unpaid leave, citing the importance of petitioner's position to the museum, the inadequacy of temporary help, and budget constraints. He further indicated she must either return to work full time by 18 May 1992 or submit alternative proposals for accommodating the museum's needs as well as her own.

On 13 May 1992, Dr. Hertle wrote director Millard that petitioner was unable to return to work for the foreseeable future. Dr. Hertle requested that petitioner be placed on short term disability, and that director Millard forward the necessary forms. Director Millard replied 18 May 1992, indicating he had received no alternative proposals from petitioner concerning accommodation of the museum's needs, but extending the deadline for such proposals to 25 May. Director Millard also provided petitioner with the appropriate contact to apply for short term medical disability. *See* N.C.G.S. § 135-100 *et seq.* (1995). Petitioner's application for short term disability of one year beginning 13 June 1992 was approved following her termination and was subsequently extended for an additional year.

Petitioner's 21 May reply to director Millard contained no alternative proposal. In a letter dated 28 May 1992, director Millard notified petitioner she would be separated effective 29 May 1992 due to "unavailability when leave is exhausted."

Petitioner appealed through the grievance process of the University, her discharge ultimately being upheld by University Chancellor Paul Hardin (Hardin). Hardin nonetheless recommended that petitioner's shared leave application be processed, and that she be allowed an extension of time to receive donated leave. Petitioner testified she eventually obtained donated leave satisfying all but thirty-two hours of her shared leave request.

Petitioner filed a request for a contested case hearing before the Office of Administrative Hearings (OAH) on 16 December 1992. She alleged the University had "acted erroneously; arbitrarily or capriciously; failed to act as required by law or rule; and/or failed to use

proper procedure." The matter was heard 21 June 1993 before Administrative Law Judge Brenda B. Becton (the ALJ), who rendered a recommended decision in petitioner's favor 1 October 1993. In making her decision, the ALJ analyzed petitioner's termination under the factors set forth in N.C. Admin. Code tit. 25, r. 1E.1104 (November 1990) (25 NCAC 1E.1104).

However, in a 15 August 1994 decision containing its own findings of fact and conclusions of law, the SPC upheld Hardin's action. The SPC concluded as a matter of law that petitioner's application for leave without pay was subject to review under N.C. Admin. Code tit. 25, r. 1D.0519 (November 1989) (25 NCAC 1D.0519), and that substantial evidence supported her discharge thereunder. With respect to petitioner's request for voluntary shared leave, the SPC concluded:

> The State Personnel Act does not provide a right to challenge the denial of such leave. Therefore, the State Personnel Commission has no jurisdiction over this issue.

On 15 September 1994, petitioner sought judicial review in the trial court. The matter was heard 27 March 1995 and, "[a]fter reviewing the whole record," the court affirmed the decision of the SPC in an order filed 17 April 1995. Petitioner appeals.

Petitioner first argues the SPC failed to address whether the University, in denying her leave without pay, considered factors such as petitioner's needs, the likelihood of her returning to duty, and the ability of the University to reinstate her to a position of like status and pay upon her return. *See* 25 NCAC 1E.1104. She further contends the SPC's findings of fact were not supported by substantial evidence, and that its failure to adopt the ALJ's recommended findings was arbitrary and capricious. Petitioner's contentions cannot be sustained.

Judicial review of an administrative decision is governed by the North Carolina Administrative Procedure Act (the APA). N.C.G.S. § 150B-1 *et seq.* (1995). Under the APA, the court reviewing a final agency decision may affirm the agency, remand for further proceedings, or it may reverse or modify the decision

> if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> . . . .

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary or capricious.

G.S. § 150B-51(b).

On appeal from the trial court to this Court, our task is twofold: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly. *Haynes v. N.C. Dept. of Human Resources*, 121 N.C. App. 513, 515, 470 S.E.2d 56, 57 (1996); *Gray v. Orange County Health Dept.*, 119 N.C. App. 62, 73, 457 S.E.2d 892, 900, *disc. review denied*, 341 N.C. 649, 462 S.E.2d 511 (1995); *In re Appeal of Harper*, 118 N.C. App. 698, 701, 456 S.E.2d 878, 880, *disc. review denied*, 340 N.C. 567, 460 S.E.2d 317 (1995); *Friends of Hatteras Island v. Coastal Resources Comm.*, 117 N.C. App. 556, 566-67, 452 S.E.2d 337, 344 (1995).[1] However, we need consider only "those grounds for reversal or modification argued by the petitioner before the superior court, and properly assigned as error on appeal to this Court." *Professional Food Services Mgmt. v. N.C. Dept. of Admin.*, 109 N.C. App. 265, 268, 426 S.E.2d 447, 449 (1993).

**[1]** Petitioner's argument the SPC erroneously failed to address the factors set out in 25 NCAC 1E.1104 in approving her termination is tantamount to assertion of an error of law. *See Amanini*, 114 N.C. App. at 678, 443 S.E.2d at 120 ("rules, regulations and policies promulgated by the [SPC under statutory authority] have the force and effect of law," and erroneous interpretation thereof by agency constitutes an error of law). Accordingly, our *de novo* review of this contention is required. *See In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993). *De novo* review compels a court to consider a question anew, as if not considered or decided below. *Friends of Hatteras Island*, 117 N.C. App. at 567, 452 S.E.2d at 344.

The SPC determined petitioner was properly terminated on grounds of "unavailability" pursuant to 25 NCAC 1D.0519. Relevant portions of the regulation state:

---

1. The concurrence herein highlights the divergence in opinions of this Court regarding our role on appeal of matters first decided in an administrative proceeding. The problem received detailed discussion in *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674-76, 443 S.E.2d 114, 118-19 (1994), and further in *Willoughby v. Bd. of Trustees of State Employees Ret. Sys.*, 121 N.C. App. 444, 446-47, 466 S.E.2d 285, 287-88 (1996).

.0519 UNAVAILABILITY WHEN LEAVE IS EXHAUSTED

(a) An employee may be separated on the basis of unavailability when the employee becomes or remains unavailable for work after all applicable leave credits and benefits have been exhausted and agency management does not grant a leave without pay for reasons deemed sufficient by the agency. Such reasons include, but are not limited to, lack of suitable temporary assistance, criticality of the position, budgetary constraints, etc. Such a separation is an involuntary separation, and not a disciplinary dismissal . . . .

(b) Prior to separation, the employing agency shall meet with or at least notify the employee in writing, of the proposed separation, the efforts undertaken to avoid separation and why the efforts were unsuccessful. The employee shall have the opportunity in this meeting or in writing to propose alternative methods of accommodation. If the proposed accommodations are not possible, the agency must notify the employee of that fact and the proposed date of separation. . . .

(c) Involuntary separation pursuant to this Rule may be grieved or appealed. The employing agency must also give the employee a letter of separation stating the specific reasons for the separation and setting forth the employee's right of appeal. The burden of proof on the agency in the event of a grievance is not just cause as that term exists in G.S. 126-35. Rather, the agency's burden is to prove that the employee was unavailable and that the agency considered the employee's proposed accommodations for his unavailability and was unable to make the proposed accommodations or other reasonable accommodations.

Petitioner maintains director Millard, when reviewing her application for unpaid leave, should have considered the factors listed in 25 NCAC 1E.1104 in addition to those set out in subsection (a) above. 25 NCAC 1E.1104 reads as follows:

.1104 AGENCY RESPONSIBILITY

The decision to grant leave without pay is an administrative one for which the agency head must assume full responsibility. Factors to consider are needs of the employee requesting leave, workload, need for filling employee's job, chances of employee returning to duty, and the obligation of the agency to reinstate employee to a position of like status and pay. It is the responsi-

BEAUCHESNE v. UNIVERSITY OF N.C. AT CHAPEL HILL

[125 N.C. App. 457 (1997)]

bility of the agency to administer leave without pay in a manner that is equitable to all of its employees. Reinstatement to the same position or one of like seniority, status and pay must be made upon the employee's return to work unless other arrangements are agreed to in writing. If it is necessary to fill a position which is vacant by leave without pay, the position may be filled by a temporary or time-limited permanent appointment, whichever is appropriate.

Petitioner misapprehends the purport of the two regulations.

The foregoing sections governing unpaid leave apply in different situations. 25 NCAC 1D.0519 is contained in that portion of Title 25 labelled "SECTION .0500—SEPARATION," which also includes regulations dealing with resignation and retirement. Statutory authority for its enactment is derived specifically from N.C.G.S. § 126-4(7a) (1993), which provides that "the State Personnel Commission shall establish policies and rules governing . . . [t]he separation of employees," and N.C.G.S. § 126-35 (1993), which dictates procedures to be used in disciplinary actions against state employees.

By contrast, 25 NCAC 1E.1104 is situated in the segment of Title 25 denominated "SECTION .1100—OTHER LEAVES WITHOUT PAY;" leave under this section may be granted for "educational purposes, vacation, or for any other reasons deemed justified by the agency head and the State Personnel Director," 25 NCAC 1E.1101. Statutory authority for 25 NCAC 1E.1104 is listed as being derived from N.C.G.S. § 126-4, the section setting forth powers and duties of the SPC, as a whole.

25 NCAC 1D.0519 covers circumstances wherein an employee is presently absent from work, has no leave time to cover the absence, and is therefore subject to separation. On the other hand, 25 NCAC 1E.1104 governs requests for unpaid leave at some future date, regardless of whether the employee has available leave time. In the former situation, because the employee is immediately absent from work, there may be a need for swift agency action; 25 NCAC 1D.0519 thus allows an agency to deny leave without pay "for reasons deemed sufficient by the agency." By contrast, 25 NCAC 1E.1104 requires that certain factors be considered by the agency in deciding whether to grant leave without pay, such as the "needs of the employee" and the "obligation [i.e., ability] of the agency to reinstate employee to a position of like status and pay" when he or she returns. Obviously, consideration of such factors is more easily accomplished when

the agency has advance notice of the employee's desire for leave time.

Under the circumstances *sub judice*, we conclude the SPC committed no error of law in determining 25 NCAC 1D.0519 to be applicable to its review of petitioner's termination upon denial of her application for unpaid leave, and that consideration of the factors set out in 25 NCAC 1E.1104 was neither necessary nor appropriate.

[2] Notwithstanding, petitioner points to the requirement of 25 NCAC 1D.0519(b) that the agency consider alternative proposals to separation put forward by the employee. Petitioner insists her application for unpaid leave qualified as an alternative proposal which was not properly considered by director Millard. However, when 25 NCAC 1D.0519(a) and (b) are read together, it is evident the accommodations anticipated in the latter section do not include leave without pay, but rather such alternatives as reduction in hours from full to part-time, or alteration of work schedule to make the employee available to perform critical work. Indeed, inclusion of unpaid leave as an accommodation under 25 NCAC 1D.0519(b) would render the discussion of unpaid leave in 25 NCAC 1D.0519(a) redundant. When possible, a regulation is to be construed to give all parts meaning. *Cf. Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969) (statutory provisions dealing with same subject matter should be construed to give meaning to each provision). Petitioner's contention that her request for unpaid leave constituted a proposed accommodation is therefore unfounded.

[3] Regarding petitioner's claim that the SPC's decision was not supported by substantial evidence and was arbitrary or capricious, the "whole record" test must be employed. *See Friends of Hatteras Island*, 117 N.C. App. at 567, 452 S.E.2d at 344. In applying the "whole record" test, the reviewing court must examine all competent evidence, including that which contradicts the agency's findings, to determine if the agency decision is possessed of a rational basis in the evidence. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 530-31, 372 S.E.2d 887, 889-90 (1988). However,

> the "whole record" test does not allow the reviewing court to replace the [agency's] judgment as between two reasonable conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*.

*Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). Further, the court may not "disturb an agency's assess-

ment of the credibility of the witnesses and the weight and suffi-ciency" to be given the evidence. *Teague v. Western Carolina University*, 108 N.C. App. 689, 692, 424 S.E.2d 684, 686, *disc. review denied*, 333 N.C. 466, 427 S.E.2d 627 (1993).

As to the "arbitrary or capricious" standard, this Court has observed that meeting the required showing is a difficult task. *See Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989). Under this measure, the reviewing court may not overturn decisions within an agency's discretion "when that dis-cretion is exercised in good faith and in accordance with the law." *Id.* Nonetheless, agency decisions may properly be characterized as "arbitrary or capricious" if they are

> "patently in bad faith," or "whimsical" in the sense that "they indi-cate a lack of fair and careful consideration" or "fail to indicate 'any course of reasoning and the exercise of judgment'. . . ."

*Id.* (citations omitted).

The trial court's order indicates it employed the "whole record" test in determining whether the SPC's decision was supported by sub-stantial evidence or was arbitrary or capricious, and petitioner does not contend otherwise. The trial court having exercised the appro-priate scope of review concerning these issues, we turn to an exami-nation of the "whole record" in light of petitioner's assignments of error to determine if the record sustains the court's ruling affirming the SPC. *See Friends of Hatteras Island*, 117 N.C. App. at 566-67, 452 S.E.2d at 344.

Review of the "whole record" reveals substantial evidence to sup-port the SPC's findings that petitioner was properly terminated under applicable provisions of 25 NCAC 1D.0519. Petitioner became unavailable for work upon falling ill 13 April 1992 without sick or vacation leave. She presented no evidence as to when, if ever, she might be able to return to work. In the meantime, her position as the only secretary in the museum was not adequately filled by part-time employees, resulting in considerable disruption. Moreover, petitioner failed to respond to director Millard's request to provide a proposal regarding how her needs could be accommodated with those of the museum. Such evidence, taken as a whole, supports the SPC's deter-mination that director Millard properly evaluated and subsequently denied petitioner's request for leave without pay under 25 NCAC 1D.0519.

Indeed, petitioner in her appellate brief tracks the factors set out in the regulation by asserting that

> her job was critical to the University and that her absence would cause a hardship on the smooth running of the Ackland Art Museum. The record reflects that she was a good employee and that in her absence things tended to fall apart. Employees could not get their work out, improper information was given to customers calling in, routine phone calls were handled improperly, payroll could not be handled properly, mail was lost and papers were misfiled. As the only secretary in the department, her position was vital, and temporary help was certainly not as good as having Petitioner on the job.

Moreover, we reiterate that notwithstanding petitioner's failure to submit a proposed accommodation, the museum attempted to accommodate her absence by hiring temporary help. Substantial evidence in the record reveals this solution did not meet the needs of the museum.

The trial court therefore correctly determined petitioner failed to demonstrate that the SPC's challenged findings were "unsupported by substantial evidence . . . in view of the entire record as submitted." In addition, the SPC's decision may not fairly be characterized as "patently in bad faith" or failing "to indicate . . . 'the exercise of judgment,' " *Lewis*, 92 N.C. App. at 740, 375 S.E.2d at 714, and the trial court thus did not err in upholding the SPC's ruling as neither "arbitrary [n]or capricious."

## II.

[4] We turn next to petitioner's argument asserting failure to process her application for shared leave in a timely manner. The record indicates petitioner's request for shared leave accompanied Dr. Hertle's 28 April letter to director Millard, who neglected either to sign the request or to forward it for approval to the University shared leave coordinator. In his testimony, director Millard conceded he was unfamiliar with details of the University's shared leave policies, and that the Department of Human Resources had previously indicated petitioner's application was not handled properly.

The University responds that even if petitioner's shared leave application is accurately described as having been processed in a tardy fashion, the SPC correctly concluded it had no jurisdiction over the decision regarding shared leave and that it accordingly could not

consider any failure to act on petitioner's application. The SPC's Conclusion of Law #7 stated that:

> The [University] had the authority to review the merits of the voluntary shared leave request and approve or disapprove such a request. There is no obligation for an agency to grant an employee the opportunity for voluntary shared leave. The State Personnel Act does not provide a right to challenge the denial of such leave. Therefore, the State Personnel Commission has no jurisdiction over this issue.

Petitioner contends that denial of the prompt opportunity to assemble shared leave constituted a contested case under the jurisdiction of the SPC. As petitioner is asserting the SPC committed an "error of law" in its determination of lack of jurisdiction, our *de novo* review is again required. *See McCrary*, 112 N.C. App. at 165, 435 S.E.2d at 363. Based on the discussion which follows, we hold there is no right of appeal regarding processing of an employee's shared leave application.

Initially, we observe that

> [t]here is no inherent right of appeal from an administrative decision to either the OAH or the courts. "No appeal lies from an order or decision of an administrative agency of the State or from judgments of special statutory tribunals whose proceedings are not according to the course of common law, *unless the right is granted by statute.*"

*Empire Power Co. v. N.C. Dept. of E.H.N.R.*, 337 N.C. 569, 586, 447 S.E.2d 768, 778 (1994) (emphasis added) (quoting *In re Assessment of Sales Tax*, 259 N.C. 589, 592, 131 S.E.2d 441, 444 (1963)). The University is expressly exempted from the administrative hearings provisions of the APA, N.C.G.S. § 150B-1(f); accordingly, petitioner may be entitled to an OAH hearing, and subsequent review by the SPC, only if otherwise statutorily provided. *Nailing v. UNC-CH*, 117 N.C. App. 318, 324, 451 S.E.2d 351, 355 (1994), *disc. review denied*, 339 N.C. 614, 454 S.E.2d 255 (1995).

The University properly maintains the controlling statute is N.C.G.S. § 126-37(a) (1993), *see Batten v. N.C. Dept. of Correction*, 326 N.C. 338, 343, 389 S.E.2d 35, 38 (1990), *overruled on other grounds*, *Empire Power*, 337 N.C. at 584, 447 S.E.2d at 777, the relevant section of which provides:

**BEAUCHESNE v. UNIVERSITY OF N.C. AT CHAPEL HILL**

[125 N.C. App. 457 (1997)]

Appeals involving a disciplinary action, alleged discrimination, and any other contested case arising under this Chapter shall be conducted in the Office of Administrative Hearings as provided in Article 3 of Chapter 150B . . . . The State Personnel Commission shall make a final decision in these cases as provided in G.S. 150B-36.

The University further contends petitioner's claim does not fall within the purview of G.S. § 126-37(a), thereby depriving OAH and the SPC of jurisdiction over her grievance.[2] We agree.

The University's failure to process petitioner's application for shared leave in a timely manner did not involve a disciplinary action, and petitioner has proffered no allegations of discrimination with regards to treatment of her application for shared leave. In addition, we have reviewed the State Personnel Act and have found no provision indicating that agency action on a request for shared leave gives rise to a contested case. We therefore conclude the SPC had no jurisdiction to consider petitioner's appeal on this issue.

In sum, petitioner's request for unpaid leave was properly considered by application of the factors set forth in 25 NCAC 1D.0519(a). Further, substantial evidence in the record supports her involuntary separation in consideration of these factors, and the decision to terminate petitioner may not properly be characterized as arbitrary and capricious. Finally, failure to act on petitioner's application for shared leave in a timely manner did not give rise to a contested case under the State Personnel Act. The trial court thus did not err in affirming the decision of the SPC.

Affirmed.

Judge GREENE concurring in the result.

Judge MARTIN, Mark D., concurs.

Judge GREENE concurring in the result:

I agree with the result reached by the majority. I do not agree that the majority has applied the correct standard of review. The majority

2. N.C.G.S. § 126-34.1 (effective 1 June 1995) now specifies with particularity those "personnel actions or issues" which may constitute the basis for "a contested case" under the State Personnel Act. However, the amended statute is inapplicable to the instant appeal.

states the standard of review for this Court: "[O]ur task is twofold: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." I believe this Court's standard of review is the same as that of the superior court. *Dockery v. N.C. Dep't of Human Resources*, 120 N.C. App. 827, 829, 463 S.E.2d 580, 582 (1995); *Wilkie v. N.C. Wildlife Resources Comm'n*, 118 N.C. App. 475, 482, 455 S.E.2d 871, 876 (1995); *Fain v. State Residence Comm. of UNC*, 117 N.C. App. 541, 543, 451 S.E.2d 663, 665, *aff'd*, 342 N.C. 402, 464 S.E.2d 43 (1995); *Brooks v. Ansco & Assocs.*, 114 N.C. App. 711, 715-16, 443 S.E.2d 89, 91-92 (1994); *Teague v. Western Carolina University*, 108 N.C. App. 689, 691, 424 S.E.2d 684, 686, *disc. rev. denied*, 333 N.C. 466, 427 S.E.2d 627 (1993); *Jarrett v. N.C. Dep't of Cultural Resources*, 101 N.C. App. 475, 478, 400 S.E.2d 66, 68 (1991). In other words, this Court's duty is to review the decision of the administrative agency (not the order of the superior court) in accordance with section 150B-51. *Cf. Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 627, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980) (all appellate courts are bound by the same standards of review). Indeed the majority in this case reviewed the "whole record" of the administrative agency and determined that there was "substantial evidence to support the SPC's findings that petitioner was properly terminated."

I acknowledge that there are two lines of cases in this Court with respect to this Court's standard of review of cases from the Superior Court when that court has reviewed a decision of an administrative agency. Our Supreme Court, however, has held that the Court of Appeals must exercise the same standard of review as that exercised by the superior court when the review relates to an administrative agency decision. *See Brooks, Comm'r of Labor v. Grading Co.*, 303 N.C. 573, 579-81, 281 S.E.2d 24, 28-29 (1981); *cf. Concrete Co.*, 299 N.C. at 626-27, 265 S.E.2d at 382-83 (Court of Appeals must exercise same standard of review as the superior court when reviewing zoning decisions of town board).